IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Mark Alan Moon, ) | C/A No.: 1:12-1225-TMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| Sheriff Steven Mueller, Captain Steven ) | |
| Anderson, Marcy Queen, and Margaret ) | |
| Lewis, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Mark Alan Moon ("Plaintiff"), proceeding pro se and in forma pauperis, brought this action, which is construed as brought pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated at the Cherokee County Detention Center ("CCDC"). Defendants Steven Mueller, Steven Anderson, Marcy Queen, and Margaret Lewis ("Defendants") are prison officials at CCDC. Before the court is Defendants' motion for summary judgment [Entry #59]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for summary judgment is dispositive, this Report and Recommendation is entered for review by the district judge.

I.      Factual and Procedural Background

Plaintiff alleges that on June 28 or 29, 2011, he began experiencing pain from an inner ear infection. [Entry #20 at 2]. According to the complaint, on an unspecified date,

Plaintiff notified facility officers who subsequently notified Nurse Lewis[1] and also independently notified the nurse around this time. *Id*. at 2–3. Plaintiff alleges he was denied medical treatment for at least ten days. *Id*. at 3. On July 14, 2011, Plaintiff complained to Lewis about his ear when she was giving him his daily medication, and she noted that it appeared swollen. *Id*. He was taken to the local hospital for treatment that day and was prescribed an antibiotic and eardrops. [Entry #65-4 at 2–3]. Plaintiff alleges that he was not provided the prescribed medications for another three days. Plaintiff believes he has suffered permanent hearing loss a result of Defendants' "severe medical neglect." [Entry #20 at 3].

Plaintiff also alleges that he suffered a seizure on November 2, 2011, while in Defendants' custody. *Id*. Plaintiff further alleges that Defendants violated his constitutional right to exercise his religion by prohibiting him from receiving "paperback books, sermon pamphlets, and vocational Bible study materials." *Id*. at 4. Finally, Plaintiff claims that defendant Queen illegally opened his legal mail outside of his presence. *Id*.

Defendants filed their motion for summary judgment on December 21, 2012. [Entry #59]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #60]. Plaintiff filed a response in opposition to Defendants' motion on February 15, 2013. [Entry #65] and

---

[1] Although Plaintiff's complaint refers to Nurse Margaret Stephens, Plaintiff corrected the name of the defendant in a subsequent filing. [Entry #45].

Defendants filed a reply on February 25, 2013. Having carefully considered the parties' submissions and the record in this case, the court recommends granting Defendants' motion.

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are

3

irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

        1.    Fourteenth Amendment Review

Plaintiff's claims are analyzed through the lens of the Due Process clause of the Fourteenth Amendment. "[A] pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). "However, not every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Hill,* 979 F.2d at 991. "And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. In doing so, the *Bell* court noted, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted

prisoners and pretrial detainees." *Id.* at 546.

However, "pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243–44 (1983) and *Hill*, 979 F.2d at 991–92). Therefore, the standards applied in Eighth Amendment conditions of confinement cases are essentially the same as those in cases arising under the Fourteenth Amendment for pretrial detainees. *See Hill*, 979 F.2d at 991; *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (citations omitted).

      2.  Deliberate Indifference to Serious Medical Needs

Plaintiff alleges Defendants' actions in responding to and treating his ear infection and seizure constitute "severe medical neglect." In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was

careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Here, Plaintiff has not demonstrated a claim of deliberate indifference to his serious medical needs. While Plaintiff alleges that he notified officials of his condition, he has not specified a date and has failed to provide any documentation, such as a sick call request, prior to July 9, 2011. On July 14, Lewis noticed swelling on Plaintiff's right side, and he was taken to a hospital where he received treatment. Although there was a brief delay in Plaintiff's receipt of the prescribed medications, they were ultimately

provided[2] and Plaintiff's ear infection was eventually resolved. Based on these facts, there is insufficient evidence to show that Lewis knew or should have known of Plaintiff's complaints prior to July 9, 2011. The brief delays in transporting Plaintiff to a doctor and providing his antibiotic also fail to demonstrate treatment that is "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness" such that it constitutes deliberate indifference to Plaintiff's serious medical needs. *Miltier*, 896 F.2d at 851. Although Plaintiff alleges he has suffered permanent hearing loss, he has provided no evidence to support this allegation.

Additionally, to the extent Plaintiff alleges Defendants' act or omissions constituted negligence or malpractice, such claims are insufficient to state a claim pursuant to § 1983. Plaintiff has also failed to bring a state-law claim of medical malpractice, as he failed to file a notice of intent to file suit and an expert affidavit as required by S.C.Code § 15–79–125. [3]

Plaintiff also alleges "medical neglect" because he suffered a seizure while in Defendants' custody. Plaintiff provides no allegations that Defendants knew or should have known that he was at risk of suffering a seizure. Nor does Plaintiff allege that Defendants failed to treat him after he suffered the seizure. Because Plaintiff has not

---

[2] Defendant Lewis avers that although Plaintiff's antibiotic was changed from Amoxicillin to Cipro, this treatment was appropriate for his ear infection.

[3] Although Plaintiff has requested that the court provide assistance [Entry #65 at 1], it is well-settled that a grant of in forma pauperis status does not mean that an "in forma pauperis plaintiff's discovery [or other court] costs either are underwritten or are waived." *Badman v. Stark*, 139 F.R.D. 601, 604 (M.D.Pa. 1991); *Boring v. Kozakiewicz*, 833 F.2d 468, 473–75 (3rd Cir. 1987) (district court not required to pay for plaintiffs' expert medical witness)

shown Defendants were deliberately indifferent to his serious medical needs related to his ear infection or seizure, the undersigned recommends Defendants be granted summary judgment on this claim.

### 3. Exhaustion

Defendants assert that Plaintiff's claims related to the opening of his legal mail and prohibition of religious materials should be dismissed for failure to exhaust administrative remedies. In response, Plaintiff attaches grievances from June and July 2012 complaining of improper opening of his mail. [Entry #65-6].

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a § 1983 action concerning his confinement. Specifically, 42 U.S.C.A. § 1997(e) states: "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. In *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires "proper exhaustion." *Id.* The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id.* (internal quotations and citations omitted).

The purpose of the exhaustion requirement is twofold. First, it gives an

administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 548 U.S. 81, 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*

Here, Plaintiff has not provided any evidence that he exhausted his administrative remedies related to his mail prior to filing suit. The grievances attached to Plaintiff's response are related to instances of alleged improper opening of legal mail occurring after Plaintiff filed the instant case. [Entry #65-6]. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement. Additionally, Plaintiff does not attach any evidence that he ever filed any grievances related to the alleged prohibition on his religious materials. Therefore, Defendants are entitled to summary judgment on these claims based on Plaintiff's failure to exhaust because the PLRA requires that prisoners exhaust their administrative remedies prior to filing suit. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (finding that "prisoners must exhaust 'such administrative remedies as are available' prior to filing suit in federal court challenging prisoner conditions") (quoting 42 U.S.C. § 1997e(a)). [Entry #65-6].

III.   Conclusion

For the foregoing reasons, the undersigned recommends Defendants' motion for summary judgment [Entry #59] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

March 11, 2013                                    Shiva V. Hodges
Columbia, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).